UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          CRIMINAL ACTION

VERSUS          NO. 24-92

MICHAEL CELESTINE          SECTION "R"

## ORDER AND REASONS

Defendant Michael Celestine moves to dismiss the superseding indictment on the grounds that 18 U.S.C. § 922(g)(1), which prohibits possession of a firearm by a convicted felon, is unconstitutional as applied.[1] The government opposes this motion.[2]  For the following reasons, the Court denies the motion.

## I. BACKGROUND

Celestine was charged in a superseding indictment of being a felon-in-possession in violation of 18 U.S.C. §§ 922(g)(1), and 924(a)(8).  The

---

[1]      R. Doc. 40.  Defendant initially moved to dismiss the indictment, R. Doc. 31, and then filed the present motion after being indicted by the superseding indictment.  Both motions sought to dismiss the 18 U.S.C. § 922(g)(1) charge.

[2]      R. Doc. 39.

indictment identifies Celestine's prior felonies, including a conviction for aggravated burglary in violation of La. Rev. Stat. § 14:60.[3]

Celestine moves to dismiss the superseding indictment on the grounds that Section 922(g)(1) is unconstitutional as applied to him under the Second Amendment, that it is unconstitutionally vague in violation of his Fifth Amendment Due Process rights, and that it unconstitutionally exceeds Congress's power to regulate under the Commerce Clause.[4] The government opposes the motion, arguing that U.S. Supreme Court and Fifth Circuit precedent preclude defendant's argument.[5] The Court considers the motion below.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A court can grant such a motion without a trial when a question of law is involved. *United States v. Fontenot*,

---

[3]    R. Doc. 35 at 1–2.  Celestine was also convicted twice of being a felon-in-possession of a firearm and for possession of a controlled dangerous substance, specifically, cocaine. *Id.*

[4]    R. Doc. 40-1 at 1.

[5]    R. Doc. 39.

665 F.3d 640, 644 (5th Cir. 2011). Applicable defenses include "a defect in the indictment or information," as alleged here. Fed. R. Crim. P. 12(b)(3)(B).

## III.  DISCUSSION

### A. Unconstitutional As Applied

Defendant first asserts that Section 922(g)(1) is unconstitutional as applied to him under the U.S. Supreme Court's Second Amendment decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 144 S. Ct. 1889 (2024), and the Fifth Circuit's holding in *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024). The Court finds that Section 922(g)(1) is not unconstitutional as applied to defendant under the constitutional standards applied in *Bruen*, *Rahimi*, and *Diaz*.

In *Bruen*, the Supreme Court stated the test for the constitutionality of regulations of the right to bear arms under the Second Amendment. *Bruen* held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."[6] *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). The Supreme

---

[6]  The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Court further held that when conduct is presumptively protected, the "government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* To determine whether a historical regulation is a "proper analogue" for a modern firearm regulation, the Court must evaluate whether the two regulations are "relevantly similar." *Id.* at 29. The Court identified two metrics that are "central" to the inquiry of whether the new law is relevantly similar to laws "our tradition is understood to permit." *United States v. Rahimi*, 602 U.S. 680, 692 (2024); *see Bruen*, 597 U.S. at 28–29. Those two metrics are "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29. This inquiry requires consideration of whether the two regulations "impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id. Rahimi* made clear that the challenged regulation does not have to be a precise match of its "historical precursor" to be a sufficient analogue to satisfy constitutional requirements. *Rahimi*, 602 U.S. at 692.

In *Diaz*, *supra*, the Fifth Circuit applied these principles to find that Section 922(g)(1) was constitutional when applied to a defendant who was previously convicted of theft of a vehicle. The Fifth Circuit first concluded that "[t]he plain text of the Second Amendment covers the conduct

prohibited by § 922(g)(1)," which proscribes firearm possession by a convicted felon.[7]  *Diaz*, 116 F.4th at 467.  The burden then shifted to the government to demonstrate that Section 922(g)(1) as applied to defendant was "consistent with the Nation's historical tradition of firearm regulation." *Id.* (quoting *Bruen*, 597 U.S. at 24).  The court found that, at the time of the Founding, those convicted of theft were subject to the death penalty and estate forfeiture. *Id.* at 468–69.  When considering the historical regulations and Section 922(g)(1), the "why" considerations were comparable in that both were justified by the need to "punish felons, deter reoffending, and protect society from those proven untrustworthy to follow the law." *Id.* at 469.  "How" the laws achieved their goals was likewise comparable because they both permanently punished offenders.  The Fifth Circuit found that permanent disarmament under Section 922(g)(1) did not punish such offenders to an extent greater than capital punishment and estate forfeiture that applied at the time of the Founding.  The court thus concluded that because "at least one of the predicate crimes that Diaz's § 922(g)(1)

---

[7]    18 U.S.C. § 922(g)(1) states, "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

conviction relie[d] on—theft—was a felony [at the time of the Founding] and thus would have led to capital punishment or estate forfeiture[, d]isarming Diaz fits within this tradition of serious and permanent punishment." *Id.* at 469–70.

The court buttressed this determination with a second method of analysis. The court referred to other historical records that revealed that the public understanding of the Second Amendment around the time of its ratification was that "the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* at 470. It also pointed to colonial-era laws that punished "going armed" offenses with permanent arms forfeiture. *Id.* at 470–471. The court concluded that, "'[t]aken together,' laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to" defendant and "people like" defendant. *Id.* at 471 n.7.

Here, the Court considers whether aggravated burglary under La. Rev. Stat. § 14:60 can serve as a constitutional predicate for a Section 922(g)(1) prosecution. [8] Aggravated burglary is defined under Louisiana law as:

---

[8]    R. Doc. 35 at 2.

the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, under any of the following circumstances: (1) If the offender is armed with a dangerous weapon, (2) If, after entering, the offender arms himself with a dangerous weapon, [or] (3) If the offender commits a battery upon any person while in such place, or in entering or leaving such place.

The Court finds that, as *Diaz* held, the plain text of the Second Amendment covers the conduct prohibited by Section 922(g)(1). *Diaz*, 116 F.4th at 467. The burden therefore shifts to the government to demonstrate that the regulation of defendant's possession of a firearm is "consistent with the Nation's historical tradition of firearm regulation." *Id.* (citing *Bruen*, 597 U.S. at 24).

In upholding the application of Section 922(g)(1) to theft of a vehicle, *Diaz* relied on evidence of historical analogues from the time of the Founding that demonstrated that those convicted of theft were subject to the death penalty and estate forfeiture. *Id.* at 468–69. The same type of historical evidence relied on by *Diaz* reveals that colonial-era laws likewise authorized the death penalty and estate forfeiture for individuals convicted of burglary. *See* Act of Feb. 21, 1788, ch. 37, 1788 N.Y. Laws 664–65 ("That every person who hereafter shall be in due form of law convicted or attainted of . . . burglary . . . shall suffer death for the same, and shall be hanged by the neck until he, she, or they shall be dead."); *id.* at 666 (requiring estate forfeiture

for burglary conviction); 3 Records of the Court of Assistants of the Colony of the Massachusetts Bay 1630–1692, at 135–136, 294 (John Noble ed., 1904) (involving an appeal of a death sentence by a man convicted of burglary in Massachusetts); Raphael Semmes, Crime and Punishment in Early Maryland 272 n.36 (Johns Hopkins Press, 1996) ("Robbery and burglary were in 1742 made capital offenses and punishable by death" in Maryland.); Jack D. Marietta and G. S. Rowe, Troubled Experiment: Crime and Justice in Pennsylvania, 1682-1800 22, 75 (University of Pennsylvania Press, 2006) (labeling and punishing burglary as a capital felony in colonial Pennsylvania).

Further, as in *Diaz*, the justifications, or the "why," of both Section 922(g)(1) and of historical laws imposing capital punishment and estate forfeiture is relevantly similar in that they both seek to deter violence and lawlessness. *Diaz*, 116 F.4th at 469. And *Diaz* demonstrates that "how" these laws achieved their goals is comparable, *i.e.*, by permanently punishing offenders. *Id.* The Court therefore concludes that, if capital punishment was permissible to respond to burglary, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *See Diaz*, 116 F.4th at 469.

8

Moreover, aggravated burglary's additional element of being "armed with a dangerous weapon" or "commit[ting] battery upon any person while in," entering, or leaving a specified location supports the application of Section 922(g)(1). *See* La. Rev. Stat. § 14:60(A)(1)–(3). As stated in *Rahimi*, "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902; *see Diaz*, 116 F.4th at 470; *cf. id.* 471 n.5 (noting that the crime in *Diaz* did not involve a threat of violence so that *Rahimi*'s statement did not apply). "A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed . . . a crime that inherently poses a significant threat of danger, including . . . burglary." *United States v. Williams*, 113 F.4th 637, 663 (6th Cir. 2024). Therefore, the government may restrict firearm access to those convicted of aggravated burglary because inherent in such a conviction is posing a threat to the physical safety of others.

The Court therefore holds that the Second Amendment does not preclude the enforcement of Section 922(g)(1) against Celestine. *See United States v. Cooper*, No. CR 23-131, 2025 WL 316341, at *5 (E.D. La. Jan. 28, 2025) (finding that simple burglary under Louisiana Law is a constitutional Section 922(g)(1) predicate); *see also United States v. Frazier*, No. 24-CR-

00093, 2024 WL 5113496, at *3 (W.D. La. Dec. 12, 2024) (finding Section 922(g)(1) applies to a defendant whose felony convictions included aggravated burglary and second-degree robbery under Louisiana law).

### B. Vagueness

Defendant next argues that Section 922(g)(1) is unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause because it fails to provide fair notice of the conduct it prohibits. Defendant attempts to demonstrate that the Supreme Court's interpretation of Second Amendment rights makes it unclear which subset of individuals previously convicted of crimes punishable by more than a year of imprisonment have a right to possess firearms, leading to an unconstitutionally vague, piecemeal approach to Section 922(g)(1).[9] His arguments fail.

There is a "strong presumptive validity that attaches to an Act of Congress." *Skilling v. United States*, 561 U.S. 358, 403 (2010) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). The Supreme Court has made clear that "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *Nat'l Dairy*

---

[9]    R. Doc. 40-1 at 8–10.

*Prods. Corp.*, 372 U.S. at 32.  A criminal law is void for vagueness under the Fifth Amendment when it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975); *see United States v. Clark*, 582 F.3d 607, 614 (5th Cir. 2009) ("As a threshold matter, [defendant] must show that the statute is vague *in his case*." (emphasis in original)).  "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982).

There is no authority holding Section 922(g)(1) void for vagueness in the context of a predicate aggravated burglary conviction.  Defendant's argument is essentially that the Supreme Court's and lower court precedents have created "contradiction[s] and confusion" among courts as to the constitutionality of Section 922(g)(1).[10]  Defendant fails to demonstrate that Section 922(g)(1) is vague regarding his conduct.  Section 922(g)(1) makes it

---

[10]    R. Doc. 40-1 at 10.

"unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. First, defendant's conduct clearly falls under Section 922(g)(1): He was previously convicted of a crime punishable by imprisonment of a term exceeding one year, and he allegedly possessed a firearm. Given the terms of the statute and the facts at hand, an ordinary person would have sufficient notice that Celestine's alleged conduct comes within the terms of the statute.

Second, the Supreme Court's Second Amendment jurisprudence creates no uncertainty as to the applicability of Section 922(g)(1) in this case. The Supreme Court made it clear that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 602 U.S. 680, 700 (2024). The Court noted that the United States's tradition of surety and going armed laws confirm that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698. Celestine was convicted of aggravated burglary, which involved being armed with a dangerous weapon or committing a battery upon a person while in the dwelling. La. Rev. Stat. § 14:60(A)(1)–(3). A person of ordinary intelligence, having been convicted of this offense, would know that the unauthorized entering an inhabited dwelling with a dangerous weapon

presents a "clear threat of physical violence to another" and puts him squarely in the crosshairs of Section 922(g)(1) if he thereafter possesses a firearm.    Given our historical tradition and the Supreme Court's acknowledgment in *Rahimi*, an ordinary person would have fair notice that, in the light of the facts here, his conduct violated Section 922(g)(1).

For the foregoing reasons, Section 922(g)(1) is not unconstitutionally vague.

## C. Commerce Clause

Defendant argues that Section 922(g)(1) exceeds Congress's authority under the Commerce Clause.    Defendant's Commerce Clause argument is foreclosed by the Fifth Circuit's precedent.    *See United States v. Diaz*, 116 F.4th 458, 462 (5th Cir. 2024); *see also United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013) ("[W]e have consistently upheld the constitutionality of § 922(g)(1).").    Indeed, defendant himself notes that this "argument is presently foreclosed and raised solely to preserve it for further review."[11] This Court is bound to follow Fifth Circuit precedent.    Thus, the Commerce Clause argument fails.

---

[11]    *Id.* at 10 n.3.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion.[12]


New Orleans, Louisiana, this  18th  day of February, 2025.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[12]    R. Doc. 40.  R. Doc. 31 is dismissed as moot.